IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARLENE HARTWELL, O/B/O,
DANIEL J. HARTWELL,

      Plaintiff,                           CIV. S. 05-1007 LKK GGH

  vs.

JO ANNE B. BARNHART,         FINDINGS AND RECOMMENDATIONS
Commissioner of Social Security,

      Defendant.
_____/

        Plaintiff, through his mother, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Child's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, the court recommends that plaintiff's Motion for Summary Judgment or remand be denied, the Commissioner's Motion for Summary Judgment be granted, and judgment be entered for the Commissioner.

BACKGROUND

        Plaintiff, born June 26, 1989, applied for disability benefits through his mother on December 6, 2002. (Tr. at 49.) Plaintiff alleged disability due to attention deficit hyperactivity disorder ("ADHD"). (Tr. at 14, 65.) In a decision dated November 23, 2004, ALJ Catherine R.

Lazuran determined that plaintiff was not disabled. The ALJ made the following findings:

    1.    Claimant protectively filed an application for SSI disability benefits on December 6, 2002.

    2.    Claimant is a 15-year-old child who has never engaged in SGA.

    3.    Claimant has the severe impairment of ADHD.

    4.    Claimant does not have an impairment or combination of impairments either listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

    5.    Claimant has a less than marked limitation in the area of acquiring and using information.

    6.    The claimant has a less than marked limitation in the area of attending and completing tasks.

    7.    Claimant has no limitations in the area of interacting and relating with others.

    8.    Claimant has no limitations in the area of moving and manipulating objects.

    9.    Claimant has no limitations in the area of caring for self.

    10.    Claimant has a less than marked limitation in the area of health and physical well-being.

    11.    Claimant does not have any impairment or combination of impairments that functionally equals a listed impairment.

    12.    Claimant is not and has not been under a disability as that term is defined in the Social Security Act, as amended, since December 6, 2002.

(Tr. at 18-19.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Erred in Proceeding With the Hearing Despite Plaintiff's Failure to Knowingly and Intelligently Waive His Right to Counsel; B. Whether the ALJ Failed to Correctly Consider the Witness Evidence Offered on Behalf of the Plaintiff; and C. Whether the ALJ Erred in Summarily Concluding that Plaintiff's Impairments Did Not Meet or Equal the Listing of Impairments.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

Childhood disability is defined under the Act as requiring "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§1382c(a)(3)(C)(i); see Jamerson v. Chater, 112 F.3d 1064, 1065-66 (9th Cir. 1997). In determining whether a child is disabled, the ALJ should apply the three-step sequential evaluation process established under the Social Security regulations. In summary, that three-step process requires a child to show that: (1) he or she is not working; (2) he or she has a "severe" impairment or combination of impairments; and (3) that his or her impairment or combination of impairments is of listing-level severity, that is, that the impairment(s) meets, medically equals or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924(b)-(d); Scott v. Barnhart, 297 F.3d 589, 594 n.5 (7th Cir. 2002); Wilson v. Apfel, 179 F.3d 1276, 1278 n.1 (11th Cir. 1999); Weatherspoon v. Massanari,

\\\\\

1  228 F. Supp. 2d 1041, 1043-44 (E.D. Mo. 2002); Smith v. Massanari, 139 F. Supp. 2d 1128, 1132 (C.D. Cal. 2001).

ANALYSIS

A. The ALJ Did Not Err in Proceeding With the Hearing Despite Plaintiff's Failure to Knowingly and Intelligently Waive His Right to Counsel

Plaintiff contends that he did not knowingly and intelligently waive his right to counsel at the administrative hearing because he was only 14 years old at the time, and his mother, who had severe depression and Attention Deficit Disorder ("ADD") was his only representative.

Plaintiff has a statutory right to counsel at the administrative hearing which may be knowingly and intelligently waived. Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal. 1984), citing Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1982), Floyd v. Schweiker, 550 F. Supp. 863 (N.D. Ill. 1982). Even if the waiver is deficient, plaintiff must demonstrate prejudice or unfairness in the proceedings in order to obtain a remand. Hall v. Secretary of Health, Educ. & Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979). The real issue, however, is not whether the waiver was knowing or intelligent, but whether without the representation, the ALJ met his burden "to conscientiously and scrupulously probe into, inquire of, and explore for all the relevant facts" in order to protect plaintiff's interest. Id., quoting Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981); Cox v. Califano, 587 F.2d 988 (9th Cir. 1978). This duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are elicited at hearing. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001). Only if the plaintiff can show prejudice or unfairness in the administrative proceeding as a result of not having counsel, is remand warranted. Vidal, 637 F.2d at 713.

\\\\\

1    Plaintiff contends that the ALJ at hearing advised plaintiff's mother of the right to
2 counsel, and that the administration had sent her some letters regarding that right.  Plaintiff's
3 mother responded that she had received the letters.  The ALJ next asked her whether she wanted
4 to proceed with the hearing without a representative, and she responded, "[y]eah, I think I will
5 because I couldn't find anyone really." (Tr. at 267.)  The ALJ then questioned the plaintiff
6 without his mother present.  (Id. at 268-69.)  Plaintiff complains that the ALJ failed to inquire
7 into the steps taken by plaintiff's mother to obtain counsel, or to advise her of the availability of
8 legal services organizations who provide free services.

9    Defendant is correct in noting that plaintiff's mother was advised on four separate
10 occasions in writing of plaintiff's right to counsel at the hearing.  (Tr. at 29, 34-35, 40, 42.)
11 Contrary to plaintiff's contention, plaintiff and his mother were notified more than once that
12 there are groups which can help them find counsel or render free legal services, and that some
13 lawyers charge a fee only if benefits are awarded.  (Id. at 29, 34.)

14    The argument that plaintiff's mother was suffering from severe depression and
15 ADD herself and did not understand this right, is unavailing.  Because plaintiff's mother was
16 already receiving SSI benefits for these disorders indicates that she was very familiar with the
17 system and the right to counsel and waiver.  In fact, as aptly pointed out by defendant, plaintiff's
18 mother had completed the exhaustion process without assistance in the instant case, and filed and
19 properly served the federal complaint.  The court finds that plaintiff knowingly and intelligently
20 waived his right to counsel at the hearing.

21    Plaintiff also alleges that the ALJ failed to fully and fairly develop the record in
22 light of her heightened duty in dealing with an unrepresented 14 year old child.  The record
23 indicates that the ALJ fulfilled her duty.  Not only did she question plaintiff, but she also
24 questioned his mother separately after his mother had been excused from plaintiff's testimony so
25 that her testimony would be independent from plaintiff's.  First, the ALJ asked plaintiff's mother
26 whether she had any other documents or records that she wanted to be included in the file, in

5

addition to the enumerated exhibits. (Tr. at 267-68.) Then the ALJ explained all of the issues in the case to plaintiff and his mother. (Id. at 268.) The ALJ went over plaintiff's report cards with him, special resource programs in school, school disciplinary action he had received, and medications he was taking. (Id. at 271-76.) The ALJ also spent a significant amount of time questioning plaintiff about the regularity of his medication regimen. (Id. at 276-83.) Plaintiff was also asked about the various medical practitioners he was seeing. (Id. at 282-3.) Plaintiff additionally testified about activities outside of school, such as basketball team, riding a bike, swimming, using a computer, doing chores, watching a movie, and reading. (Id. at 289-91.) Chores include vacuuming, cleaning, washing dishes, cleaning the bathtub, taking out trash. (Id. at 291.) The ALJ spent considerable time delving into plaintiff's daily life. (Id. at 292-99.)

The ALJ also questioned plaintiff's mother extensively, especially regarding what type of special education plaintiff received at school and confirming that the ALJ had all the school records. (Id. at 301-02.) Plaintiff's mother also testified about his behavior problems, both at school and at home, his medications and non-compliance, as well as chores around the house, which are hard to get him to do, but once started, are done well. (Id. at 303-06, 307-08, 315.)

It is true that the ALJ asked plaintiff's mother to obtain further junior high school records, but she asked Ms. Hartwell how much time she needed and then gave her two weeks after Ms. Hartwell responded that she did not need much time. (Tr. at 303.) Plaintiff's mother was able to obtain these further records without problem as evidenced by the record. (Id. at 257-64.)

Plaintiff also claims that the ALJ did not obtain forms from plaintiff's treating psychiatrist and therapist, and there was no real evidence, such as "forms," in the file regarding the effect of plaintiff's impairments on his ability to function. The ALJ sufficiently developed the medical evidence. The record contains the treating records covering the period from 1989 to 2004, and psychiatric treating records in particular for 2000 to 2003. There are forms addressing

the effect of plaintiff's impairment, including teacher questionnaires, childhood disability evaluation forms completed by physicians, and a childhood disability evaluation form, completed by a psychiatrist. (Tr. at 160-256.)

Here, the ALJ obtained the extra records after the hearing, heard testimony from both plaintiff and his mother, and had ample medical evidence with which to make a decision. The court finds that the ALJ fully and fairly developed the record for a fair adjudication.

B. The ALJ Properly Evaluated The Testimony of Plaintiff's Lay Witness

Plaintiff also takes issue with the ALJ's treatment of lay testimony by plaintiff's mother. An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Contrary to plaintiff's contention that the ALJ ""totally omitted any mention of this third party evidence," the ALJ did refer to plaintiff's mother's testimony: "Appellant testified that she was not aware that claimant was not taking Concerta on a regular basis. She also said that Dr. Loertz, the treating psychiatrist, has said it is not really necessary that claimant take the medication on the weekends." (Tr. at 17-18.) The ALJ did note that this advice was not clear from the treatment records. (Id. at 18.)

If the ALJ had discussed the remainder of plaintiff's mother's testimony, he might have noted her testimony that plaintiff acts up and will not take Concerta on weekends. (Tr. at

7

307.) In response to the ALJ's question why plaintiff had not been taking his medication regularly, because that goes toward the issue of non-compliance with medical treatment, Ms. Hartwell replied, "Oh, yeah, he has, you know – in order to get the benefits." (Tr. at 307-08.) She testified that he had not been compliant a while back but in the last month he had been taking it regularly except for weekends. (Id. at 307-08.) In fact, she admitted that the year before the hearing, plaintiff had only taken his medication "once in a blue moon." (Id. at 308.) She also testified in response to the question whether she followed Dr. Maffly's advice to remove the television from her son's room, that he would respond by kicking the walls so she did not remove it. She tries not to upset him because he is hard to control. (Id. at 313-14.) She also testified that he is difficult to awake in the morning, requiring her to yell at him, and she has a hard time getting him to do chores, having to ask him five times. (Id. at 314, 315.) When he finally completes the chores, including vacuuming, cleaning, and washing dishes, he is a good worker and does an excellent job. (Id. at 315.) He has also done odd jobs for a therapist friend for which he got paid $10 per hour. (Id. at 316.) None of this testimony would support a finding that Daniel Hartwell was disabled under fairly stringent criteria.

Other testimony by plaintiff's mother not discussed by the ALJ, is cumulative to the evidence set forth and thoroughly addressed by the ALJ. For example, plaintiff's mother testified that the teachers informed her that plaintiff is disruptive in class and cannot sit still. (Id. at 304.) The ALJ took first-hand evidence from these very teachers in the form of questionnaires and assessments. (Id. at 16.) Both plaintiff's mother and plaintiff himself testified that he is able to maintain concentration when he takes his medication. (Id. at 17, 307, 279.) The ALJ also discussed plaintiff's testimony, as corroborated by his mother, that he took no medication for most of the year 2003, and that other times he did not take it for one or two months at a time. (Id. at 17, 279, 308.) The ALJ additionally mentioned how independent plaintiff was in his daily activities, which was set forth in testimony by plaintiff's mother. (Id. at 18, 315.) Therefore, to the extent that the ALJ did not specifically reject this lay witness testimony, it was harmless error

8

based on the reasons set forth above.[1]  An error which has no effect on the ultimate decision is harmless. Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990).

C. The ALJ Correctly Concluded that Plaintiff's Impairments Did Not Meet or Equal the Listing of Impairments

Plaintiff next argues that the ALJ erred in failing to find that plaintiff met or equaled the listings, and that she should have called upon a medical expert to assist her in evaluating functional equivalence.

Under prior law, a child was considered disabled if the child suffered "from any medically determinable physical or mental impairment of comparable severity" to an impairment that would disable an adult. Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998). Such inquiry was relevant to the determination of childhood disability utilized under earlier regulation. Bryant, 141 F.3d at 1251. However, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 imposed a more stringent standard for evaluation childhood disability claims. Briggs, 139 F.3d at 608 (citing H.R. Conf. Rep. No. 104-725 (1996), reprinted in, 1996 U.S.C.C.A.N. 2649, 2716 (stating "severe" should be given its ordinary meaning, not "other than minor"); 142 Cong. Rec. S4095-05, S4099 (daily ed. April 25, 1996 (referring to "tightened definition of childhood disability")); see also Jamerson v. Chater, 112 F.3d 1064, 1068 (9th Cir. 1997) (new standard is more stringent); Bryant, 141 F.3d at 1251 (new legislation requires a child to prove that he or she has a medically determinable physical or mental impairment resulting in marked and severe functional limitations, and eliminates inquiry under the earlier

---

[1] The Ninth Circuit has just held that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination. Stout v. Commissioner, ___ F.3d ___, 2006 WL 2052306 (9th Cir. July 25, 2006). Even though this standard is extremely high and rivals, if not surpasses the Chapman harmless error standard in criminal law (error harmless only if no reasonable doubt about its lack of effect), that case does not change the result here as no ALJ could have reached a different conclusion, even if plaintiff's mother's testimony were fully discussed. In essence, the mother's testimony is not much different than the medical evidence.

9

evaluation process regarding whether the claimant's impairment was of comparable severity to one that would disable an adult).

The 1996 legislation applies to "any individual who applies for, or whose claim is finally adjudicated with respect to, Social Security benefits after the date of the enactment of the Act." Briggs, 139 F.3d at 608 (quotations omitted); Jamerson, 112 F.3d at 1066 (interim final rules become effective April 14, 1997); Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir. 1997); Towenson, by Mickeal v. Apfel, 16 F. Supp. 2d 1329, 1332 (D. Kan. 1998).

At step three of the sequential evaluation, if the child has a severe impairment or combination of impairments that does not meet or medically equal any listing, the Commissioner "will decide whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). In considering a child's functioning, the Commissioner considers how the child functions in his or her activities in terms of six "domains." 20 C.F.R. § 416.926a(b)(1). "These domains are broad areas of functioning intended to capture all of what a child can or cannot do." Id. The six domains are listed in the regulations as follows:

> (i) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for yourself; and
> (vi) Health and physical well-being.

Id. See Duran v. Barnhart, No. 01 Civ. 8307(GWG), 2003 WL 103003, at *9-10 (S.D.N.Y. Jan. 13, 2003); Harris v. Barnhart, 231 F. Supp. 2d 776, 779-80 (N.D. Ill. 2002).

If a child has "marked" limitations in two areas of functioning, or an "extreme" limitation in one area, that child's impairment(s) is considered functionally equivalent in severity to a listed impairment. 20 C.F.R. § 416.926a(d). The terms "marked" and "extreme" are explained in the regulations. In this regard, claimants are advised that

> [w]e will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-

> day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i). Claimants are further advised that

> [w]e will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i). See Jefferson v. Barnhart, 209 F. Supp. 2d 1200, 1205 (N.D. Okla. 2002).

In this case, plaintiff was diagnosed with ADHD and Oppositional Defiant Disorder in 1998. (Tr. at 246.) Problems included failing grades, inattention, hyperactivity, impulsivity, and getting into trouble at school for behavior problems. He was originally prescribed Ritalin which worked well for a time, but later was put on Concerta which greatly improved his functioning. (Id. at 238, 276.)

The ALJ carefully analyzed the six separate domains, finding that plaintiff had less than a marked limitation in the areas of acquiring and using information, attending and completing tasks, and health and physical well-being. (Tr. at 16-17.) In regard to interacting and relating with others, moving about and manipulating objects, and caring for himself, the ALJ found no functional limitations. (Id. at 17.) In so finding, he noted plaintiff's grades, although fluctuating, were explained by his poor compliance with medication. (Id. at 16.) Plaintiff's grades had improved to four Cs and two Ds in April, 2004. (Id.) The ALJ relied on the teachers'

reports regarding acquiring and using information wherein they found he only had mild problems. (Id.) It was also noted that plaintiff could maintain concentration while watching television and reading, which is consistent with his teacher's note that he is "very capable of functioning successfully in class when he chooses." (Id. at 17.) The ALJ also cited to evidence that plaintiff gets along well with classmates, teachers and family. (Id.) In regard to moving about and manipulating objects, the ALJ again relied on the teachers' questionnaires and plaintiff's own testimony that he can ride a bicycle, swim and run. He also testified that he dresses himself, and does household chores and simple cooking, which is also consistent with the teachers' evaluations that he had no limitation in the area of caring for himself. (Id.) Plaintiff had no other physical problems, other than a history of asthma for which he does not presently need treatment. (Id. at 18.) Based on the lack of any marked limitations, the ALJ concluded that functional equivalence could not be found.

The ALJ's findings are supported by the record which contains two teacher evaluations, Kaiser treatment records, and an SSA consultation evaluation, all of which indicate only mild problems, none of which approach a marked limitation. Plaintiff was evaluated by his teachers on January 21, 2003 and September 11, 2003. These questionnaires included ratings in a variety of functions, most of which assigned a rating of no problem or slight problem. (Tr. at 160-67, 202-09.) Only a total of three categories in both questionnaires were assigned a rating of "obvious problem:" organizing own things or school materials, completing homework assignments, and completing work accurately without careless mistakes, all of which are under the category labeled "attending and completing tasks." (Id. at 162, 204.) Based on a scale of 1 to 5, with 3 being an obvious problem, 4 being a serious problem, and 5 being a very serious problem, it stands to reason that the rating of 3 in these three categories does not approach a marked limitation. In regard to all other categories, plaintiff was rated as having no problem or only a slight problem: acquiring and using information, interacting and relating with others, moving about and manipulating objects, and caring for self. (Id. at 161-65, 203-07.)

Additionally, one teacher, Ms. Lonso, stated that plaintiff spent a weekend with her family and was capable of doing what needed to be done at her home, as well as in class when he chooses. (Id. at 204.)

Plaintiff's file was also evaluated by two SSA doctors, both of whom found that plaintiff did not meet or equal the listings. (Tr. at 213-19, 168-73.) On September 17, 2003, Dr. Mateus, a psychiatrist, stated that plaintiff had no limitation in the categories of acquiring and using information, interacting and relating with others, moving about and manipulating objects, caring for self, and health and well-being. (Id. at 215-16.) In regard to attending and completing tasks, the same category in which plaintiff's teachers found him to have an "obvious problem," Dr. Mateus rated him as less than marked. (Id. at 215.) This rating was based on the opinion that plaintiff was doing well on Concerta which improved his performance in school. (Id. at 218.) These findings were an improvement over the earlier rating by SSA Dr. Walk, who also had not found a single marked limitation. He found plaintiff had no limitation in interacting and relating with others, but that plaintiff did have a less than marked limitation in acquiring and using information and attending and completing tasks. (Id. at 171.) He also concluded that plaintiff did not meet or equal the listings. (Id. at 168.) These two sets of evaluations appear to indicate that plaintiff's functioning improved over time while he regularly took his medication.

Furthermore, plaintiff's Global Assessment of Functioning score of 65 throughout the records indicated only mild symptoms.[2] (Tr. at 177, 179, 180, 222.) Other Kaiser records indicate that plaintiff's condition improved when he took medication regularly. (Id. at 174, 181.)

After the ALJ decision, plaintiff's mother submitted more recent high school progress reports and a report card, attempting to show that his grades as a freshman in 2004 had

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, A GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM IV.

13

worsened since middle school.  These records do show that plaintiff was in danger of failing some classes.  (Tr. at 258-64.)  Attached to these records is a letter from plaintiff's mother, indicating that plaintiff has been taking his medication regularly but is still having problems.  (Id. at 257.)  The Appeals Council did not find that these records provided a basis for overturning the ALJ's decision.  (Id. at 6.)  These additional records, when considered with the remainder of the records submitted, indicate that plaintiff's performance at school has a direct correlation to taking his medication.  For example, he received grade reports in 2003 which also made references to "in danger of failing," at a time when plaintiff was not compliant in taking medication.  (Tr. at 94, 96.)  Due to his admission that he does not always tell his mother truthfully whether he takes his medication and her admission that she relies on him to take it himself, the court gives little weight to her letter stating that he takes it regularly.  (Tr. at 292, 308.)

A significant factor in plaintiff's functioning is his need to take his medication on a regular basis, and his failure to do so.  During the time plaintiff regularly followed the prescription, his symptoms were abated.  Both plaintiff's mother and teachers reported that the medication resulted in a "major change for the better."  ((Id. at 238.)  As long as plaintiff took his medication, he did not get in trouble at school and was able to function well.  (Id. at 221, 215, 174, 181.)  He also suffered no side effects from the Concerta.  (Tr. at 176, 185.)   Plaintiff did not like to take his medication, however, and his mother testified that she had a hard time in getting him to take it regularly.  She testified that he would only take it "once in a blue moon," for a period of time, but that when he took the medication regularly, he did much better.  (Id. at 308.)  She added that he still refuses to take it on weekends, and that Dr. Loertz told them that he did not have to take it on weekends.  (Id. at 307, 308.)  In fact, the medical records do not indicate that plaintiff is not required to take the medication on weekends.  (Tr. at 176.)  Plaintiff himself testified that he stopped taking medication for most of a whole year, that he was telling his mother that he was actually taking it when he was not, and that his grades and behavior at school were better when he took it.  (Id. at 279, 292, 283.)  When plaintiff did not take his

14

medication, his grades worsened from Cs to Ds and Fs, he had missing and incomplete assignments, a poor attitude, and behavior problems. (Tr. at 178.) A condition which can be controlled or corrected by medication is not disabling. See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling).

Plaintiff further contends that the ALJ should have called a medical expert to determine if he met or equaled the listings because the evidence was unclear.

Disability hearings are not adversarial. Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring)). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).[3] The duty also is heightened in the case of a mentally ill claimant who may not be able to protect him or herself. Id.

Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition which could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)

The ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources, (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to resolve the

---

[3] See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).

disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan, 242 F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).  Ordering a consultative examination ordinarily is discretionary, see Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987), and is required only when necessary to resolve the disability issue.  See Reeves v. Heckler, 734 F.2d 519, 522 (11th Cir.1984); Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

The court finds that the ALJ properly used his discretion in declining to order a consultative exam as the record was not ambiguous, especially in light of the fact that there were already two consultative medical opinions on equivalence in the record.

CONCLUSION

The court finds the ALJ's assessment to be fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS RECOMMENDED that plaintiff's Motion for Judgment or Remand be DENIED, the Commissioner's Motion for Summary Judgment be GRANTED, and Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 8/1/06                                              /s/ Gregory G. Hollows

                                                           GREGORY G. HOLLOWS
                                                           U.S. MAGISTRATE JUDGE

GGH/076 - Hartwell1007.ss.wpd